1

**MICHAEL W. DOTTS, Esq.**
**O'Connor Berman Dotts & Banes**

2

**Second Floor, Nauru Building**
**P.O. Box 501969**

3

**Saipan, MP96950**

4

**Telephone No. (670) 234-5684**
**Facsimile No. (670) 234-5683**

5

*Attorneys for Defendant*

6

F I L E D
Clerk
District Court

AUG – 4 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

*ORIGINAL*

7

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE NORTHERN MARIANA ISLANDS**

9

**EQUAL EMPLOYMENT OPPORTUNITY**      )      **CIVIL ACTION NO. 04-0028**
**COMMISSION,**                                          )

10

                                                                       )

11

                    **Plaintiff,**                            )      **OPPOSITION TO MOTION**
            **vs.**                                              )      **TO QUASH**

12

**MICRO PACIFIC DEVELOPMENT, INC.**      )
**dba SAIPAN GRAND HOTEL,**                  )

13

                                                                       )      **Date:  August 25, 2005**
                    **Defendant.**                        )      **Time:  8:30 a.m.**

14

                                                                       )

15

                                                                       )

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

# INTRODUCTION

Two subpoenas were served but only one remains in issue. The subpoena served on Renen Ansus is withdrawn by the Defendant based upon the representation made by the Plaintiff that the Plaintiff "does not intend to call Mr. Ansus as a witness at trial". Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Quash Subpoena Duces Tecum, filed July 21, 2005, ("Plaintiff's Memorandum") at p. 3, l. 5. Further, Mr. Ansus sat for his deposition on July 21, 2005, and based upon his testimony, it is unlikely that the Defendant will call him at trial and unlikely that the records sought from him will lead to admissible evidence.

The second subpoena served on Vicente Torres is another matter. That subpoena should not be quashed.

The subpoena to Vicente Torres sought two categories of documents objectionable to the Plaintiff. First, the subpoena sought documents that reflected the finances of Mr. Torres and his wife, real party in interest Julieta Torres.[1] Second, the subpoena sought records that the Torreses had submitted to the CNMI to obtain Immediate Relative status and to the United States Immigration Service in order for Julieta Torres to become a United States citizen. This brief will explain why both categories of documents could lead to the discovery of admissible evidence and were proper.

---

[1] There are three real parties in interest. Julieta Torres, Arcely Sison and Aurora Salac. The Defendant sought to depose Vicente Torres, the husband of Julieta Torres, because he is alleged to have witnessed certain events (he works at the Grand Hotel) and has been listed by the EEOC as having discoverable information. Renen Ansus was also subpoenaed and deposed. Renen Ansus is the adult son of Julieta Torres and worked as a waiter for the Grand Hotel during the time when his mom alleges she was harassed.

1

K:\Lolit\Saipan Grand (2793)\2793-05-050803-PL-Oppo2Motion2Quash-leb.doc

## II.

## FINANCIAL RECORDS

The finances of the Torreses are relevant for two distinct reasons. First, there is evidence that the Torreses were under extreme financial pressure in 2003 and brought this claim through the EEOC purely to get money to pay creditors and not because the harassment they allege to have happened actually occurred. Second, it is believed Julieta Torres was borrowing money from Akira Ishikawa, the alleged sexual harasser, at a time when she alleges the sexual harassment was occurring in a manner not at all consistent with a victim of sexual harassmenet, and if this is true, it makes it hard to believe Ishikawa was harassing her in the way and to the extent she now claims. The financial records could lead to the discovery of admissible evidence on both points.

### A.    The Desperate Financial Straits of the Torreses in 2003

At the deposition of Vicente Torres, he was asked if a warrant for his arrest had ever been served on him. He said "No". Attached as Exhibit "A" are three warrants for the arrest of Vicente Torres that issued between May, 1996 and September, 1997. These warrants arose out of a collection action brought against Vicente Torres and his mother.

Vicente Torres was asked at his deposition if he had ever been sentenced to jail. He said "No". Both Vicente Torres and his mother were sentenced to three days in jail, all suspended. The first time this occurred was in December, 1995 and this occurred again in April, 2003. See Exhibit "B".

The records attached as Exhibit "A" and "B" were obtained independently by the Defendant. These evidence that the Torreses were experiencing financial difficulties at the same

2

time Julieta Torres alleges she was being harassed, and at the same time Defendant believes the evidence will show she was borrowing money from her alleged harasser.

Certainly the prospect of having your own mother sent to jail because you cannot afford to pay a debt could place great stress on a family. It is very possible the harassment that Julieta Torres alleges to have occurred was exaggerated so that the couple could get money out of the Defendant to pay their debts. The subpoena to Vicente Torres is targeted at determining if this is true.[2]

Vicente Torres also testified at his deposition that he was in debt to a finance company. When Defendant's counsel inquired about that debt, Plaintiff's counsel advised Mr. Torres that he need not answer the questions. Mr. Torres then refused to answer.

The Defendant offered to seal the deposition transcript and to enter into a protective order to keep the financial information of the Torres family secret. Mr. Torres still refused to answer the questions or produce the documents under subpoena.

**B.      A Unique Approach to Obtaining Loans**

We know that the Torreses were so desperate for cash that Juliet would borrow money from Akira Ishikawa (she has admitted this). However, Mrs. Torres has only admitted to borrowing $150 in the year 2000. Upon information and belief the borrowing took place

---

[2] A document request was made to obtain the same documents from Julieta Torres. The EEOC has refused to produce the documents and a motion to compel is in the works. It is possible that unless the records are sought from both individuals (Julieta through a request to produce and Vicente by subpoena) the Defendant will not be able to get all the financial records for the couple.

3

throughout the time both Mr. Ishikawa and Mrs. Torres worked in the same kitchen. The documents sought could help prove this.

This is relevant because it calls into question whether Mrs. Torres was actually being harassed by Mr. Ishikawa during this period of time.[3] Certainly, if Mr. Ishikawa was physically assaulting Mrs. Torres as she claims she would not be going to him to borrow money.

Further, upon information and belief, Mrs. Torres had a unique method for obtaining loans from Mr. Ishikawa. She would go up to him, grab his crotch and ask him for the loan.

If the jury believes that Juliet Torres was touching Mr. Ishikawa to induce him to loan her money, then the jury may doubt her testimony that Mr. Ishikawa was sexually harassing her. The financial records evidencing the Torreses borrowing could help corroborate that Julieta was borrowing from Ishikawa.

The Torreses financial records may also lead to the identification of other creditors who may have information about how the Torreses got money to pay their bills. The documents subpoenaed are reasonably calculated to lead to the discovery of admissible evidence and should be ordered produced. The Defendant remains willing to enter into a protective order to preserve the privacy of the Torreses in their financial affairs.

---

[3] The EEOC notes that Ishikawa admitted to harassing Julieta Torres and therefore suggest this discovery is irrelevant. Ishikawa admitted to a single specific incident that occurred in November, 2002, and in general admitted to some prior inappropriate conduct. Julieta Torres now alleges many specific incidents of harassment dating back to late 1998. This alleged harassment is in dispute and is contested by the Defendant.

4

## III.

## IMMIGRATION RECORDS

The Defendant is seeking to review the documents that the Torreses submitted so that Julieta Torres could become a U.S. citizen and to obtain Immediate Relative status in the Commonwealth. The reason for this effort is that the Defendant believes the records may evidence further perjury.

The record is clear that Juliet Torres committed perjury on certain documents she submitted to the CNMI Department of Labor and Immigration. The following is an excerpt of the deposition testimony of Mrs. Torres when confronted with one of these documents:

> Q: Okay. I've --- I've highlighted a paragraph right above your signature. And why don't [you] read it with me. "I declare under penalty of perjury that the foregoing is true and correct that I have examined this affidavit, supplements thereto and accompanying documents and the information contained therein is true, correct, and complete. I further declare under penalty of perjury that I possess the skill and qualifications to perform the job for which I am applying." And that's your signature, right?
>
> A: Yes.
>
>                    . . .
>
> Q: And did you understand that this gov --- this document would be submitted to the Commonwealth government?
>
> A: Yes.
>
> Q: Did you understand that you could use the information on this to verify whether you were entitled for employment in the Commonwealth?
>
> A: Yes.
>
> Q: But you provided them false information, didn't you?
>
> A: Yes.

Deposition of Julieta Torres, taken on June 3, 2005.

A defendant is allowed in discovery to pursue the prior false statements of a witness. See e.g. Davidson Pipe Company v. Laventhol and Hoswath, 120 F.R.D. 445 (DC NY 1988) (applying a factors approach); United States v. IBM, 66 F.R.D. 215, 19 Fed.R.Serv.2d 550 (D.C. S.D.N.Y. 1974) (holding discovery for the purpose of obtaining information to impeach a witness is proper). The inquiry into the witnesses' immigration history and a review of the documents they have submitted to government agencies is reasonably calculated to lead to the discovery of admissible evidence. The subpoena should not be quashed.

The Plaintiff relies on Rivera v. Nibco, Inc., 364 F.3d 1057 (9th Cir. 2004) for the proposition that inquiry into the immigration status of a Title VII claimant is not allowed. Nibco involved female immigrants who were formerly employed at a factory and who alleged discrimination based on national origin. The Ninth Circuit affirmed the granting of a protective order because inquiry into immigration status would chill the willingness of the immigrant workforce in California to bring civil rights claims:

> There are reportedly over 5.3 million workers in the "unauthorized labor" force. [citation omitted]. Many of these workers are willing to work for substandard wages in our economy's most undesirable jobs. While documented workers face the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to INS and they will be subjected to deportation proceedings or criminal prosecution.

Rivera v. Nibco, Inc., 364 F.3d at 1064.

Here, we are not dealing with a large group claiming national origin discrimination. We are dealing with three women who claim one assistant chef sexually harassed them. All three women are even documented workers.

6

1    Here, we are not dealing with a community of 5.3 million illegal immigrants working

2    undesirable jobs.    The Commonwealth in comparison to California is very efficient in the

3    documenting of all immigrant workers. And discovery that a worker with a labor claim has lost

4    their ability to remain in the Commonwealth does not lead to criminal prosecution or

5    deportation. Such workers are allowed to remain in the Commonwealth and even work while

6    they pursue their labor cases.

7

8

9    The <u>Nibco</u> Court explained that "[t]he burden is upon the party seeking the [protective]

10   order to show 'good cause' by demonstrating harm or prejudice that will result from the

11   discovery". <u>Id</u>. at 1063. Here, the Plaintiff cannot demonstrate that harm will result if the

12   Defendant is allowed to review the applications of Juliet Torres for a green card (which she

13   obtained) and for Immediate Relative status (which she also obtained). This should not "chill"

14   anyone from bringing a sexual harassment claim if anyone else was harassed by Akira

15   Ishikawa.[4]

16

17

18   If the Plaintiff can meet its burden of showing harm or prejudice, a protective order is

19   not automatic. The Court must then balance the harm or prejudice shown against other interests:

20
> If a court finds particularized harm will result from disclosure of
> information to the public, then it balances the public and private
> interests to decide whether a protective order is necessary.

21

22

23   <u>Rivera v. Nibco, Inc.</u>, at 1063-64.

24

25

26

27

---

28   [4] The EEOC began its investigation in March, 2003, and has only turned up three real parties. The subpoenas were served in July, 2005 and it is highly unlikely that if they are enforced that there are other real parties yet to be found who will be "chilled" from finally coming forward.

7

Here, even if the balance tips in favor of granting a protective order, quashing the subpoena is beyond what is necessary. The records can be sealed and only used in Court upon further order of the Court.

The Plaintiff also cites to In re Reyes, 814 F.2d 168, 170 (5th Cir. 1987) for the proposition that discovery into immigration status has a chilling effect. Plaintiff's Memorandum at p. 9. In re Reyes dealt with migrant farm workers. The defendant in In re Reyes sought to determine with discovery into immigration status whether the claimants fell under the Fair Labor Standards Act or the Migrant Seasonal Agricultural Workers Protection Act, or could be properly represented by the Legal Services Corporation (apparently the Legal Services Corporation can only represent documented wokers). The Fifth Circuit found that both reasons for the discovery were irrelevant. Both federal laws applied equally to documented and undocumented aliens. Id., 814 F.2d at 170. The issue of whether the Legal Services Corporation could represent undocumented workers could not be litigated in the case in which the discovery was sought. Id. Here, the reason for the discovery is to determine if the same perjury that was committed by the real party in interest on her Commonwealth filings found its way into her other applications related to obtaining I.R. status and U.S. citizenship. If the real party did commit further perjury in her filings, that could lead to the discovery of admissible evidence that could be used for impeachment purposes at trial. The instant case is very different from both Nibco and In re Reyes. The subpoena issued here was proper.

In short, the Defendant would be remiss if it did not attempt to obtain the documents that were submitted by the Torreses to U.S. Immigration and CNMI Immigration. There is every reason to believe based on the perjury already discovered on documents submitted to the Department of Labor that the documents submitted for immigration purposes could contain

8

perjurious statements that could be used at trial to call into question the witnesses' honesty.   The Defendant has no objection to the entry of a protective order sealing the records for use in this case only.  But the subpoena should not be quashed.

### III.

### CONCLUSION

For the above stated reasons, the subpoena to Vicente Torres that sought financial records and the applications for U.S. citizenship and I.R. status submitted on behalf of Julieta Torres should not be quashed.

Dated: August ___4___, 2005.

Respectfully submitted,

O'CONNOR BERMAN DOTTS & BANES

By: _____

Michael W. Dotts

9

CLERK OF COURT
SUPERIOR COURT
FILED

WHITE, PIERCE, MAILMAN & NUTTING
Attorneys at Law
Post Office Box 5222
Saipan, Mariana Islands 96950
Telephone 234-6547

1996 MAY -3 PM 2:13

BY:
DEPUTY CLERK OF COURT

ATTORNEYS FOR Plaintiff

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| PACIFIC INTERNATIONAL MARIANAS, INC., dba MIDWAY MOTORS, | : | SMALL CLAIM CASE NO. 94-2422 |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | |
| | : | |
| VICENTE M. TORRES and SOLEDAD M. TORRES, | : | |
| | : | |
| Defendants. | : | |

ORDER

TO THE CHIEF OF POLICE OR ANY POLICE OFFICER OF THE NORTHERN MARIANA
ISLANDS:

YOU ARE HEREBY ORDERED to arrest and take into custody the persons of

VICENTE M. TORRES and SOLEDAD M. TORRES, and to keep said persons at the Northern

Mariana Islands jail for a term of three (3) days each.

DATED, this ____ day of May, 1996:

TIMOTHY H. BELLAS, Associate Judge

Exhibit "A"

BY: _____
DEPUTY CLERK OF COURT

1996 JUL 30 PM 3: 48

FILED
SUPERIOR COURT
CLERK OF COURT

WHITE, PIERCE, MAILMAN & NUTTING
Attorney's at Law
Post Office Box 5222
Saipan, Mariana Islands 96950
Telephone   234-6547

ATTORNEYS FOR Plaintiff

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| PACIFIC INTERNATIONAL MARIANAS, INC., dba MIDWAY MOTORS, | : | SMALL CLAIM NO.  94-2422 |
| | : | |
| Plaintiff, | : | |
| | : | |
| - v - | : | |
| | : | |
| VICENTE M. TORRES and SOLEDAD M. TORRES, | : | |
| | : | |
| Defendants. | : | |

ORDER

TO THE CHIEF OF POLICE OR ANY POLICE OFFICER OF THE NORTHERN MARIANA
ISLANDS:

YOU ARE HEREBY ORDERED to arrest and take into custody the

persons of VICENTE M. TORRES and SOLEDAD M. TORRES, and to keep said

persons at the Northern Mariana Islands jail for a term of three (3) days.

DATED, this _30_ day of July, 1996:

TIMOTHY H. BELLAS, Associate Judge

ORIGINAL

WHITE, PIERCE, MAILMAN & NUTTING
Attorneys at Law
Post Office Box 5222
Saipan, Mariana Islands 96950
Telephone 234-6547

ATTORNEYS FOR Plaintiff

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

PACIFIC INTERNATIONAL MARIANAS,   :   S. C.
INC., dba MIDWAY MOTORS,          :   CIVIL ACTION NO. 94-2422
                                  :
        Plaintiff,                :
                                  :
        -v-                       :
                                  :
VICENTE M. TORRES and             :
SOLEDAD M. TORRES,                :
                                  :
        Defendants.               :

ORDER

TO THE CHIEF OF POLICE OR ANY POLICE OFFICER OF THE NORTHERN MARIANA
ISLANDS:

        YOU ARE HEREBY ORDERED to arrest and take into custody the persons of

VICENTE M. TORRES and SOLEDAD M. TORRES, and to keep said persons at the Northern

Mariana Islands jail for a term of three  (3) days.

        DATED, _____SEP 1 2 1997_____ :

                        _____
                        TIMOTHY H. BELLAS, Associate Judge

CLERK OF COURT
SUPERIOR COURT
FILED

1995 DEC 11   A̶M̶ 10: 13

BY:_____
DEPUTY CLERK OF COURT

WHITE, PIERCE, MAILMAN & NUTTING
Attorneys at Law
Post Office Box 5222
Saipan, Mariana Islands 96950
Telephone 234-6547
Facsimile 234-9537

ATTORNEYS FOR Plaintiff

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

PACIFIC INTERNATIONAL MARIANAS,       :       SMALL CLAIM CASE NO. 94-2422
INC., dba MIDWAY MOTORS,              :

        Plaintiff,                    :

        -v-                           :

VICENTE M. TORRES and SOLEDAD M.      :
TORRES,                              :

        Defendants.                   :

ORDER

This matter came before the Court for hearing on Tuesday, the 5th day of

December, 1995, upon Plaintiff's Motion for Order to Show Cause.  Plaintiff appeared through

its Attorney, Michael A. White, Esq.  Defendants appeared personally.  Based upon the matters

adduced at hearing, the Court finds that Defendants have knowledge of this Court's Order of

February 24, 1995; that Defendants had the ability to comply with the said Order; and that

Defendants wilfully failed to do so.  The Court therefore concludes that Defendants are in

contempt of Court.  Accordingly, good cause appearing, it is hereby

-1-

**Exhibit "B"**

ORDERED, that Defendants are hereby sentenced to imprisonment in the Northern Mariana Islands jail for a term of three (3) days. Said sentence is hereby suspended, upon the following conditions: Defendants shall pay the balance due upon the judgment in this matter at the rate of $25.00 biweekly, commencing on December 22, 1995, and continuing every two weeks thereafter until full satisfaction, all payments to be made Plaintiff's attorney. In the event that Defendants shall fail to comply with any of the foregoing conditions of suspension, and upon the filing of a Declaration to that effect by Plaintiff's attorney, the aforesaid suspension of sentence shall be revoked, and a commitment order shall issue, all without further notice to Defendants, remanding Defendants into custody to serve the sentence hereby imposed. It is

FURTHER ORDERED, that Plaintiff is awarded the sum of $65.00 as costs incurred in connection with the Motion for Order to Show Cause. This sum shall be added to the balance due on the Judgment in this matter.

DATED, this ____7____ day of December, 1995:

*Timothy H. Bellas*

TIMOTHY H. BELLAS, Associate Judge

WHITE, PIERCE, MAILMAN & NUTTING
ATTORNEYS AT LAW
POST OFFICE BOX 5222
SAIPAN, MARIANA ISLANDS 96950

-2-

MICHAEL A. WHITE, ESQ.
WHITE, PIERCE, MAILMAN & NUTTING
POST OFFICE BOX 5222
SAIPAN, MARIANA ISLANDS 96950
TEL: (670) 234-6547
FAX: (670) 234-9537

ATTORNEYS FOR Plaintiff

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

PACIFIC INTERNATIONAL MARIANAS,    :    SMALL CLAIM NO.  94-2422
INC., dba MIDWAY MOTORS,            :
                                    :
          Plaintiff,                :
                                    :
          -v-                       :
                                    :
VICENTE M. TORRES and SOLEDAD M.    :
TORRES,                             :
                                    :
          Defendants.               :

ORDER

This matter came before the Court for hearing on Wednesday, the 2nd day of April, 2003, upon Plaintiff's Motion for Order to Show Cause. Plaintiff appeared through its Attorney, Michael A. White, Esq. Defendants appeared personally. Defendant Soledad M. Torres was represented by Tom Schweiger, Esq., her Attorney. Based upon the matters adduced at hearing, the Court declines to hold Defendant Soledad M. Torres in contempt of Court at this time. Based upon the matters adduced at hearing, the Court finds that Defendant Vicente M. Torres had knowledge of this Court's Order of February 24, 1995; that Defendant Vicente M. Torres had the ability to comply with the said Order; and that Defendant Vicente M. Torres wilfully failed to do so. The Court therefore concludes that Defendant Vicente M. Torres is in contempt of Court. Accordingly, good cause appearing, it is hereby

-1-

ORDERED, that Defendant Vicente M. Torres is hereby sentenced to imprisonment in the Northern Mariana Islands jail for a term of three (3) days. Said sentence is hereby suspended, upon the following conditions: Defendant Vicente M. Torres shall pay the balance due upon the judgment in this matter at the rate of $25.00 biweekly, commencing on April 7, 2003, and continuing every two weeks thereafter until full satisfaction, all payments to be made to Plaintiff's Attorney. In the event that Defendant Vicente M. Torres shall fail to comply with any of the foregoing conditions of suspension, and upon the filing of a Declaration to that effect by Plaintiff's attorney, the aforesaid suspension of sentence shall be revoked, and a commitment order shall issue, all without further notice to Defendant Vicente M. Torres, remanding Defendant Vicente M. Torres into custody to serve the sentence hereby imposed. It is

FURTHER ORDERED, that Plaintiff is awarded the sum of $75.00 as costs incurred in connection with the Motion for Order to Show Cause. This sum shall be added to the balance due on the Judgment in this matter.

DATED: _April 14, 2003_

_____
DAVID A. WISEMAN, Associate Judge

-2-