MICHAEL W. DOTTS, Esq.
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

**Attorneys for Defendant**

F I L E D
Clerk
District Court

AUG 1 8 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        **Plaintiff,**

        **vs.**

MICRO PACIFIC DEVELOPMENT, INC.
d/b/a SAIPAN GRAND HOTEL,

        **Defendant.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO. 04-0028**

**OPPOSITION TO MOTION
TO AMEND**

**Date:  September 1, 2005**
**Time:  8:30 a.m.**

ORIGINAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

I.    INTRODUCTION ...................................................................... 1

II.   PERTINENT FACTS ................................................................. 1

III.  ARGUMENT ............................................................................ 6

      A.    APHI is Not the "Successor" to Micro Pacific ........................ 6

            1.    Bates Involved a Large Class of Plaintiffs ........................ 7

            2.    Bates Involved a Spun-Off New Employer ....................... 7

            3.    Bates Involved a Consent Decree ................................... 9

            4.    The Consent Decree in Bates Sought to Rebalance
                  a Workforce ............................................................... 9

      B.    Under Criswell A Successorship Finding Would be Inappropriate ..... 10

            1.    Continuity of Workforce and Operations ......................... 11

            2.    Notice to Successor Employer of Predecessor's
                  Legal Obligation ....................................................... 11

            3.    Micro Pacific Has Not Been Shown to be Unable to
                  Provide Adequate Relief .............................................. 12

      C.    The EEOC's Delay in Seeking to Add APHI Has Cause
            Prejudice to Micro Pacific ............................................... 12

            1.    Plaintiff's Stated Reason for Requesting Leave to Amend
                  and Plaintiff's Delay in Seeking to Amend Its Complaint
                  Amount to Bad Faith ................................................... 13

            2.    The Amendment of Plaintiff's Complaint Will Cause
                  Undue Delay .............................................................. 14

            3.    The Amendment of Plaintiff's Complaint Will
                  Prejudice the Defendant ............................................... 15

      VI.   CONCLUSION ..................................................................... 16

# TABLE OF AUTHORITIES

## Cases

Bates v. Pacific Maritime Ass'n,
744 F.2d 705 (9th Cir. 1984), ........................................................................ 6, passim

Burlington Industries v. Ellerth,
524 U.S. 742 (1998) ................................................................................................2

Criswell v. Delta Air Lines,
868 F.2d 1093 (9th Cir. 1989)................................................................................10

E.E.O.C. v. Boeing Co., 843 F.2d 1213 (9th Cir.), cert. denied,
488 U.S. 889 (1988)................................................................................................13

EEOC v. Local 638,
1988 WL 25151 (S.D.N.Y., March 9, 1988) ..........................................................11

EEOC v. MacMillan Bloedel Containers,
503 F.2d 1086 (6th Cir. 1974).................................................................................11

Faragher v. Boca Raton,
524 U.S. 775 (1998)..................................................................................................2

Foman v. Davis,
371 U.S. 178 (1962)................................................................................................12

Gabrielson v. Montgomery Ward & Co.,
745 F.2d 762 (9th Cir. 1986)....................................................................................5

Golden State Bottling Co. v. NLRB,
414 U.S. 174, 94 S.Ct. 420, 38 L.Ed.2d 388 (1973)................................................8

Howard Johnson Co. v. Detroit Local Joint Executive Board,
417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1976).................................................6

Howard Johnsons,
417 U.S. 256, 94 S.Ct. 2240 ...................................................................................6

Jackson v. Bank of Hawaii,
902 F.2d 1385 (9th Cir. 1990) ................................................................................13

Jordan v. County of Los Angeles,
    669 F.2d 1311 (9th Cir.) ........................................................................................13

Jordan v. County of Los Angeles,
    669 F.2d 1311 (9th Cir.), vacated on othergrounds, 459 U.S. 810 (1982). ...............13

Lockheed Martin Corp. v. Network Solutions, Inc.,
    194 F.3d 980 (9th Cir.1999) ..................................................................................15

Miller v. Rykoff-Sexton, Inc.,
    845 F.2d 209 (9th Cir. 1988)...................................................................................5

Owens v. Kaiser Foundation Health Plan, Inc.,
    244 F.3d 708 (9th Cir. 2001) ..................................................................................13

Zenith Radio Corp. v. Hazeltine Research, Inc.,
    401 U.S. 321 (1971)................................................................................................14

## Other Authorities

6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d
    § 1487 (1990). ........................................................................................................14

# I.

## INTRODUCTION

The Plaintiff has sought to amend its Amended Complaint to name Asia Pacific Hotels, Inc. ("APHI") as an additional party defendant.   Micro Pacific Inc., the current named defendant, opposes this motion because it is unjustified and will totally disrupt this case that is now reaching the conclusion of discovery.

# II.

## PERTINENT FACTS

The Court, in deciding the EEOC's motion to amend, should keep in mind a few important dates and facts:

1.     The incident that resulted in a charge of sexual harassment being filed against Micro Pacific and that led to this case being filed in Federal Court occurred on November 24, 2002.[1]   It is alleged that on this date (a Sunday), a mid-level supervisor (Akira Ishikawa) grabbed one of the charging parties (Julieta Torres) by her pants and then pulled her to him, touching her in an offensive and totally inappropriate manner.   The button broke off of Mrs. Torres' pants and she left work early and in tears.   The next day (Monday, November 25, 2002) Mrs. Torres reported what had happened to management.[2]

---

[1] There is now alleged to have been the reporting of a prior incident sometime in 2000. The manager that that incident is alleged to have been reported to is Tomoharu Shimizu. Mr. Shimizu left the employ of Micro Pacific in early 2002.

[2] A factual issue exists over exactly what was reported on November 25, 2002.

1

2.    Micro Pacific had a company policy that prohibited sexual harassment. The policy was put in place sometime before November, 1998, and was published to the workforce through an employee handbook. Mrs. Torres acknowledged the receipt of the company handbook as did her husband and her son all of whom worked for Micro Pacific, and as did Akira Ishikawa. Employees who experience conduct that they believe to be sexual harassment are told in the company handbook how to report it and Micro Pacific is then expected to act on any reports received.[3]

3.    Micro Pacific did respond to the report made by Julieta Torres on November 25, 2005. Right after the incident was reported, two managers were assigned to investigate what happened – Jesus Aldan and Masahiko Tsuchimoto. These managers interviewed Mrs. Torres, Mr. Ishikawa, and other employees regarding Mr. Ishikawa's conduct. On November 26, 2002, the first discipline, a written warning threatening termination, was given to Ishikawa. On November 29, 2002, the management of Micro Pacific concluded that Ishikawa had violated the company policy against sexual harassment. The General Manager, Setsuo Kawai, imposed discipline on Mr. Ishikawa by making him give a written apology to Mrs. Torres, by placing a disciplinary notice in his personnel file so that it could be considered upon contract renewal, and by suspending him without pay for five days.

4.    On November 30, 2003, Mrs. Torres was transferred out of the kitchen at the hotel to housekeeping. This transfer was made at her request. It was not to a less desirable position and it did not result in any loss of pay or benefits.

---

[3] If Micro Pacific acted reasonably in its implementation of this policy, it has no liability for the conduct of Akira Ishikawa. Burlington Industries v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.E.2d 633, (1998); Faragher v. Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.E.2d 662, (1998).

2

5.      Also on November 30, 2002, as part of the conciliation process, Mrs. Torres was asked to accept the apology of Mr. Ishikawa. Mrs. Torres refused. The company did not require her to accept the apology.

6.      On January 29, 2003, Julieta Torres filed a complaint with the Department of Public Safety related to the November 24, 2002, incident. Micro Pacific did nothing to discourage or interfere with her doing so.

7.      Finally, on March 18, 2003, the November 24 incident was reported to the EEOC in the form of a charge filed by Julieta Torres. The charge filed by Mrs. Torres alleged facts well beyond what she had reported to the company at any time prior to its filing.

8.      On March 27, 2003, pursuant to Title VII of the Civil Rights Act, the EEOC began an investigation of the charge filed on March 18, 2003. See Declaration of Michael W. Dotts, filed herewith.

9.      On about July 16, 2003, Akira Ishikawa lost his employment with Micro Pacific prior to the expiration of his employment contract. Mr. Ishikawa was advised that he would not be renewed because of his conduct in violation of the company's anti-sexual harassment policy and he was repatriated back to Japan. Shortly thereafter Julieta Torres was offered her former position back in the kitchen. She declined, preferring instead to stay in housekeeping.

10.     On August 9, 2004, the investigation by the EEOC of the March, 2002 charge ended. See Dotts Declaration.

11.    On September 23, 2004, the EEOC filed suit against Micro Pacific.

12.    Two months later, on about November 30, 2004, the EEOC learned of the impending sale of the Saipan Grand Hotel property from Micro Pacific to APHI.  See Declaration of Wilfredo Tungol, filed August 1, 2005, at p. 1, para. 3.

13.    On December 3, 2004, Saipan Grand Hotel property was sold by Micro Pacific to APHI.  APHI owns other hotel properties in Saipan, including the Dai Ichi Hotels and the Century Hotel and is affiliated with the Guam Dai Ichi Hotel.  APHI is affiliated with Century Travel, Inc. and markets its hotel rooms to the Chinese tourist market.  See Declaration of Keiji Morita, filed herewith.  APHI acquired only the assets of Micro Pacific's Saipan Grand Hotel property.  Micro Pacific's liabilities were not acquired.  Id.

14.    On January 6, 2005, the EEOC learned that management of the hotel property had been transferred by Micro Pacific to APHI.  See Tungol Declaration at p. 2, para. 4. (Management actually changed hands on January 8, 2005.  See Morita Declaration).

15.    On January 13, 2005, the EEOC filed an Amended Complaint in this case.  The amendment was made in response to an order from this Court granting Defendant's Motion for a More Definite Statement.  The Amended Complaint however did not add APHI, the new owner of the Saipan Grand Hotel property, as a party.

4

16.    On February 25, 2005, the EEOC disclosed the identities of two additional real parties in interest – Arcely Sison and Aurora Salac.  Both women claim that *prior to November 24, 2002*, Akira Ishikawa had sexually harassed them as well.[4]

17.    By July 1, 2005, all of the key Micro Pacific management who had worked for Micro Pacific at the Saipan Grand Hotel property, had left their employment.  See Morita Declaration.  This included Jesus Aldan, Micro Pacific's Personnel Manager and Masahiko Tsuchimoto, Micro Pacific's Assistant General Manager, both of whom had been involved in investigating the incident reported by Julieta Torres in November, 2002.  It also included Kazuto Matsumoto, the supervisor of Akira Ishikawa.  It included Setsuo Kawai, the General Manager who had decided on the discipline for Mr. Ishikawa for Mr. Ishikawa's violation of company policy.  Micro Pacific's management was replaced by APHI's own management and the process began to integrate the Saipan Grand Hotel property into APHI's other hotel and travel related operations.

18.    On August 1, 2005, more than eight (8) months after the EEOC learned of the sale to APHI, and more than two years after Akira Ishikawa left Saipan for good, the EEOC moved to join APHI as an additional party defendant in this case.

---

[4] It should be conceded by the Plaintiff that neither of these women reported being sexually harassed by Akira Ishikawa to anyone at Micro Pacific until after the EEOC started its investigation of the charge filed by Julieta Torres, but whether these women reported sexual harassment to management at an earlier time will likely be a key question for the jury to decide at the trial.

5

## III.

## ARGUMENT

**A.    APHI is Not the "Successor" to Micro Pacific**

There is no point to the EEOC's proposed amendment to its Amended Complaint if APHI is not the "successor" to Micro Pacific.  A motion for leave to amend may be denied if it appears to be futile or legally insufficient.  <u>Miller v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988) <u>citing</u> <u>Gabrielson v. Montgomery Ward & Co.</u>, 745 F.2d 762, 766 (9th Cir. 1986). Here, the amendment that the Plaintiff seeks, that of adding APHI as a defendant, is futile and legally insufficient because APHI is not the successor to Micro Pacific.

Purchasing another company's assets and keeping on their employees does not automatically make the purchaser a "successor" employer under Title VII.  In <u>Bates v. Pacific Maritime Ass'n</u>, 744 F.2d 705, 708 (9th Cir. 1984), the Ninth Circuit noted that "Successor liability is applied only when necessary to further some fundamental policy in regulation of the industry or work place affected."  The Court in <u>Bates</u> explained that  "Each case . . . must be determined on its own facts."  <u>Bates v. Pacific Maritime Ass'n</u>, 744 F.2d at 709 <u>quoting</u> <u>Howard Johnson Co. v. Detroit Local Joint Executive Board</u>, 417 U.S. 249, 256 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1976).

> [I]n light of the difficulty of the successorship question, the myriad of factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis **on the facts of each case as it arises is especially appropriate**.

<u>Howard Johnsons</u>, 417 U.S. at 256, 94 S.Ct. at 2240; <u>accord</u> <u>Bates</u>, 744 at 709 (emphasis added).

6

Contrasting the facts of <u>Bates</u> to the facts of the instant case helps show that APHI is not a successor to Micro Pacific.

### 1.    <u>Bates</u> Involved a Large Class of Plaintiffs

In <u>Bates</u>, the plaintiffs had brought a class action alleging racial discrimination.  The <u>Bates</u> opinion is not clear on how many employees or employers were involved but the case was brought against a labor union (International Longshoreman's and Warehousemen's Union, Local 13) and an employers' association (Pacific Maritime Association) and its members.  The <u>Bates</u> case arose out of the hiring practices of the companies operating out of the Los Angeles, Long Beach Harbor, that discriminated against black applicants.  It was not specific to a single employer but involved multiple employers affecting an entire large commercial port.  It was not specific to one bad manager, but involved hiring practices at many companies that were supported by a labor union.  Here, we have three ladies (and only three) who allege that they were harassed by one specific mid-level supervisor, between the years 1998 and 2002, at a single hotel.  That supervisor, Akira Ishikawa, lost his employment with Micro Pacific in July, 2003, and is gone.  None of the management involved in implementing Micro Pacific's anti-sexual harassment policy, in investigating Julieta Torres' claim, or in disciplining Mr. Ishikawa are with APHI now.  APHI had no involvement in the alleged harassment and bears no responsibility for it.  No public purpose would be served by naming APHI as a party.

### 2.    <u>Bates</u> Involved a Spun-Off New Employer

The original defendants in <u>Bates</u> included an association of employers all providing maritime shipping, receiving and warehousing.  One employer that was part of the association and subject to a consent decree entered in the case was American Presidents Lines ("APL").  A

7

company called Metropolitan had been servicing APL at two particular docks. Metropolitan had also been subject to the same consent decree entered in <u>Bates</u> as had APL. APL created its own subsidiary to handle the work at those two docks (Eagle Marine). Metropolitan then sold out to Eagle Marine. Eagle Marine then sought to avoid the applicability of the consent decree to it. The <u>Bates</u> Court found that because of the interrelationship that existed between all involved (APL, Eagle Marine and Metropolitan), applying successorship liability to Eagle Marine to impose the consent decree upon it was appropriate.

Here, Micro Pacific was a Japanese owned business that catered to Japanese clientele through a single property on Saipan, and experienced a situation in 2002 where a mid-level supervisor sexually harassed an employee. Micro Pacific sold its hotel property assets but not its liabilities to a United States owned company that already had three hotels (the Saipan and Guam Dai Ichi Hotels and the Saipan Century Hotel), and that had no involvement in the conduct that led to this lawsuit. APHI has its own affiliate travel agency and is pursuing the Chinese tourist market. The transfer of assets from Micro Pacific to APHI was not a transfer of a business that serviced a single customer like from Metropolitan to Eagle Marine. It was the transfer of a property that APHI could integrate into its own business for its own customers to use in its own way.

//

//

//

8

### 3.    **Bates** Involved a Consent Decree

One difference in the facts between this case and <u>Bates</u> simply precludes a finding that APHI is a successor employer.   In <u>Bates</u> a consent decree had been entered pursuant to a settlement agreement with the employers' association and the labor union.   Here, Micro Pacific disputes that it violated Title VII.   There is no consent decree.

> In successorship cases, it is necessary to distinguish between the necessity for finding discrimination in the first instance, and the enforcement of an already established obligation against a successor employer.   <u>See</u> <u>Golden State Bottling Co.</u>, 414 U.S. at 174-85, 94 S.Ct. at 420-425 (successor required to reinstate employee fired by predecessor in violation of labor laws).   The consent decree established the liability of Metropolitan.   It is the enforceability of the consent decree obligation against Eagle Marine that is at issue, not the enforcement of some **unresolved Title VII obligation**.

<u>Bates v. Pacific Maritime Ass'n</u>., 744 F.2d at 709 (emphasis added).


Here, there is no enforceable obligation.   Just an unresolved Title VII claim.   Following <u>Bates</u>, APHI is not a successor to Micro Pacific.


### 4.    The Consent Decree in **Bates** Sought to Rebalance a Workforce

In <u>Bates</u> there had been a history of racial discrimination against blacks in the Los Angeles, Long Beach Harbor.   The consent decree provided that all association members (and signatories to the consent decree) must hire four blacks out of every ten new applicants.   If APL could have partially escaped the consent decree by creating Eagle Marine to replace Metropolitan, then it could have avoided the constraints imposed by the consent decree.

//

9

Here, the EEOC seeks an injunction to stop further sexual harassment at the Saipan Grand Hotel. The one sexual harasser has been gone for over two years now. The supervisors involved in implementing Micro Pacific's policies are all gone.[5] The only one left to enjoin (APHI), has not harassed anyone.

Simply put, there is no "fundamental purpose" to accomplish such as integrating an entire workforce applicable here as there was in Bates. APHI is a totally different company from Micro Pacific and it makes no sense to enjoin APHI from violating Title VII when no one is claiming APHI had anything to do with Akira Ishikawa or Micro Pacific's personnel policies.

The Plaintiff's Motion to Amend should be denied.

**B.    Under Criswell A Successorship Finding Would be Inappropriate**

The Plaintiff cites to Criswell v. Delta Air Lines, 868 F.2d 1093 (9th Cir. 1989) for its three part test to determine successorship liability. It is important to note that in Criswell, just like in Bates, the issue was imposing an existing injunction on a company that had acquired the assets of another business:

> Delta's argument ignores a basic tenet of successorship doctrine: **The obligation imposed on the successor is preexisting.** As this court noted in Bates "[i]n successorship cases, it is necessary to distinguish between the necessity of finding discrimination in the first instance, and enforcement of an already established obligation against a successor employer ..."

---

[5] The charging parties and the EEOC blame Micro Pacific for the conduct of Ishikawa and for other supervisors such as Head Chef Matsumoto and Purchasing Manager Shimizu and Personnel Manager Jesus Aldan for not taking action. All of the managers that the EEOC puts the blame on have left the hotel property and were not hired by APHI. In contrast, the huge harbor, the employers' association, the labor union and a workforce that had not yet been integrated, were all still present when the Bates case arose.

K:\Lolit\Saipan Grand (2793)\2793-05-050811-PL-Opp2MottoAmend-rga.doc

Criswell v. Delta Air Lines, 868 F.2d 1093, 1095 (9th Cir. 1989) quoting Bates v. Pacific Maritime Ass'n., supra. 744 F.2d at 709 (emphasis added).

Here, there is no preexisting obligation. Just a contingent liability.

Applying the Criswell Factors also does not support a finding of successorship liability.

1.    **Continuity of Workforce and Operations**

Although the Saipan Grand Hotel is still open, and most of the rank and file employees remain in their positions, there has been a complete change in management. APHI is integrating the property into its own hotel business.

The Court in Criswell noted that "the former Western flight operations were not integrated into Delta operations". Id. at 1045. This supported a finding of successorship. Here, the Saipan Grand Hotel property is being integrated into APHI's hotel property chain. A finding of successorship is not supported here.

2.    **Notice to Successor Employer of Predecessor's Legal** *Obligation*

In Criswell, the legal obligation that Delta was put on notice of was a permanent injunction. The "legal obligation" that the Plaintiff put APHI on notice of here, was "pending litigation against Saipan Grand Hotel". See Tungol Declaration at Exhibit 2. "Pending litigation" is not a legal obligation. The Plaintiff has not put APHI on notice of a legal obligation because Micro Pacific's liability remains, even eight months after the sale, still contingent.

The Plaintiff always points to the apology letter of Akira Ishikawa as admitting liability. "Successorship liability, [ ] rests upon the consent decree itself, not upon some independent admission of wrongdoing." <u>Bates v. Pacific Maritime Ass'n.</u>, <u>supra</u>, 744 F.2d at 709. There having been no consent decree, injunction or judgment entered here, there was nothing to put APHI on notice of. APHI cannot be held to be a successor.[6]

.

### 3.    Micro Pacific Has Not Been Shown to be Unable to Provide Adequate Relief

The Plaintiff's argument that Micro Pacific will be unable to satisfy a judgment is entirely speculative. If there is a judgment entered in favor of the Plaintiff, it will likely be for only a nominal amount. If an injunction is entered, Nagoya Railroad will have as much to learn from it as APHI. But until there is a consent decree, permanent injunction or jury verdict, it cannot be said that the Plaintiff cannot obtain adequate relief and the potential difficulty of collecting on a judgment is no basis for imposing successorship liability on APHI.

The Plaintiff's Motion to Amend should be denied.

### C.    The EEOC's Delay in Seeking to Add APHI Has Caused Prejudice to Micro Pacific

The amendment of pleadings is to be liberally granted but it is not granted in all cases. The district court may decline to grant leave to amend where there is "any apparent or declared

---

[6] The Plaintiff cites to <u>EEOC v. Local 638</u>, 1988 WL 25151 (S.D.N.Y., March 9, 1988) (Not Reported in F.Supp.). This case speaks of notice of a "liability" rather than an obligation as does the other, older Sixth Circuit case cited by the Plaintiff, <u>EEOC v. MacMillan Bloedel Containers</u>, 503 F.2d 1086 (6th Cir. 1974). Ninth Circuit law is notice of the "obligation" as discussed above. But <u>EEOC v. Local 638</u>, which did find successorship liability, involved an order and judgment entered prior to a merger (an obligation as opposed to a liability). <u>EEOC v. Local 638</u>, <u>supra</u>. at *12. Further, notice was not in issue because it involved a true merger and liabilities had been assumed. <u>Id</u>. And in <u>EEOC v. MacMillan Bloedel Containers</u>, <u>supra</u>., the Sixth Circuit found that it was error to grant a Rule 56 motion with regard to the successorship, and that the trial court should have instead granted a Rule 12 motion requiring the EEOC to make a more definite statement. <u>Id</u>. at 1094. Thus, these Sixth Circuit cases do not support a finding of successorship liability here.

12

reason" for doing so, including bad faith, undue delay, prejudice to the opposing party, or futility. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). The futility of the amendment has been discussed above. The amendment sought is also sought in bad faith, will create undue delay and will prejudice Micro Pacific.

### 1.    Plaintiff's Stated Reason for Requesting Leave to Amend and Plaintiff's Delay in Seeking to Amend Its Complaint Amount to Bad Faith

The Plaintiff decided to amend its Amended Complaint when it "recently learned that 100% of Defendant's shares were held by a foreign corporation, Nagoya Railroad Company, Ltd." <u>See</u> Declaration of Linda Ordonio-Dixon, filed August 1, 2005, p. 2, para 5. Plaintiff suddenly realized eight months after APHI bought the property that the named defendant was owned by foreign investors. While the execution of a judgment against a foreigner might prove to be more time-consuming than against a local resident, that provides no excuse for a Plaintiff to try and name in their stead a totally innocent party.

Plaintiff also has not given any explanation as to why it waited until now to seek leave to amend its Complaint except perhaps that it did not know Micro Pacific was foreign owned. Evidence that justifies a delay in seeking to amend precludes a finding that the amendment sought is in bad faith. <u>Owens v. Kaiser Foundation Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir. 2001). When no evidence is presented to justify the delay, bad faith can be found. Here, the foreign ownership of Micro Pacific was a matter of public record in 2003 and 2004 when the EEOC investigated this case. The sale of Micro Pacific's Saipan assets was known to the Plaintiff before the Plaintiff filed its first Amended Complaint in January, 2005. The amendment sought by the Plaintiff eight months after it knew of the sale but only "recently" learned that any judgment obtained will be difficult to collect, is in bad faith.

13

Finally, the EEOC has sued Micro Pacific before and in a deposition taken in 1999, the EEOC was told that Micro Pacific was foreign owned. <u>See</u> Deposition of Masayuki Tsukada, taken on October 25, 1999, <u>EEOC v. Micro Pacific Development, Inc.</u>, Civ. No. 99-0052. (Transcript on File with the Court). Plaintiff's counsel may have just learned that Micro Pacific is foreign owned but the Plaintiff has known this for years.

The Motion for Leave to Amend the Complaint should be denied.

## 2. The Amendment of Plaintiff's Complaint Will Cause Undue Delay

The Plaintiff contends it "recently learned" that Micro Pacific was foreign owned. A key question in "evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." <u>Jackson v. Bank of Hawaii</u>, 902 F.2d 1385, 1388 (9th Cir. 1990) <u>citing</u> <u>E.E.O.C. v. Boeing Co.</u>, 843 F.2d 1213, 1222 (9th Cir.), cert. denied, 488 U.S. 889, (1988); <u>Jordan v. County of Los Angeles</u>, 669 F.2d 1311, 1324 (9th Cir.), <u>vacated on other grounds</u>, 459 U.S. 810 (1982). As stated above, Micro Pacific's foreign ownership was a matter of public record in 2003 and 2004 when this case was investigated. The sale of its Saipan assets was known by November, 2004. (Plaintiff's counsel read about it in the newspaper). Waiting eight months precludes the amendment that the Plaintiff seeks because making it now cannot be justified. The facts were known before the Plaintiff filed its Amended Complaint.

More significantly, the amendment that the Plaintiff seeks is far different from merely adding a new cause of action or a new legal theory. By adding a new defendant the entire case must be re-started. If the new complaint is served on APHI in early September 2005, the case

14

1    will not be at issue until the end of September or early October at the soonest. A new case

2    management conference will result. APHI will most certainly want to conduct its own

3    discovery and all of the depositions that were taken could be taken again. APHI can be

4    expected to fight this case hard because, after all, the reason the Plaintiff wants their joinder is

5    because Plaintiff believes APHI will be easier to collect from. This puts APHI on notice that the

6    Plaintiff will be trying to collect any judgment only from APHI. APHI will certainly file a third

7    party claim for indemnification against Micro Pacific. New experts might be brought in by

8    APHI. This case will not be ready to go to trial until August, 2006, at the earliest. This is an

9    undue delay. Plaintiff's Motion should be denied.

10

11

12       **3.    The Amendment of Plaintiff's Complaint Will Prejudice the Defendant**

13       Prejudice to the opposing party is the most important factor in a ruling on whether or not

14    to grant leave to amend a pleading. See <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401

15    U.S. 321, 330-31 (1971) (trial court "required" to take potential prejudice into account in

16    deciding Rule 15(a) motion); 6 C. Wright, A. Miller & M. Kane, <u>Federal Practice and</u>

17    <u>Procedure: Civil 2d</u> § 1487 (1990). In this case, the Defendant will be prejudiced by the

18    amendment of Plaintiff's Complaint.

19

20

21       Re-opening discovery so that a new defendant can prepare its own case is prejudice to

22    Micro Pacific. See <u>Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 194 F.3d 980, 986 (9th

23    Cir.1999) (stating that "[a] need to reopen discovery and therefore delay the proceedings

24    supports a district court's finding of prejudice from a delayed motion to amend...."). But

25    additionally here, Micro Pacific no longer has a business in Saipan. It sold its assets and it

26    remains active only to defend this case. Delay of the trial in this case delays when Micro Pacific

27

28

1   can fold up.  Delay of the trial requires Micro Pacific to keep its officers retained.  The trial date

2   has already been continued once to accommodate the Plaintiff.  Any further delay in the trial,

3   that will most certainly result if a new defendant is added, prejudices Micro Pacific.

4

5

6       The Plaintiff's Motion for Leave to Amend should be denied because it will prejudice

7   the Defendant, Micro Pacific, in this case.

8

9                                          **IV.**

10                                      **CONCLUSION**

11

12      For all the above stated reasons, the motion to allow the EEOC to add APHI as a party

13  defendant should be denied

14

15

16      Dated:  August 1̸9̸, 2005.

17                                               Respectfully submitted,

18                                               O'CONNOR BERMAN DOTTS & BANES

19

20

21                                   By: _____

22                                         MICHAEL W. DOTTS

23

24

25

26

27

28

K:\Lolit\Saipan Grand (2793)\2793-05-050811-PL-Opp2MottoAmend-rga.doc

IN THE UNITED STATES DISTRICT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) CIVIL ACTION NO. 99-0052 |
| | ) |
| | )     F I L E D |
| Plaintiff, | )        Clerk |
| | )     District Court |
| v. | )     OCT 2 7 1999 |
| | ) |
| MICRO PACIFIC DEVELOPMENT, | ) For The Northern Mariana Islands |
| INC., dba SAIPAN GRAND HOTEL, | ) By |
| | )        (Deputy Clerk) |
| Defendant. | ) |
| | ) |

### DEPOSITION OF MASAYUKI TSUKADA


Taken at the Office of Judicial Services, Plus
2nd Floor, Sablan Building, San Jose
Saipan, Commonwealth of the Northern Mariana Islands

October 25, 1999


Transcribed by:
**JUDICIAL SERVICES, PLUS**
2nd Floor, Sablan Bldg., San Jose
P. O. Box 500051
Saipan, MP 96950-0051
(670) 235-7585

21

1      MS. BARBEE-WOOTEN:  He's representing the Micro

2   Pacific.

3      MR. SALAS:  Yes.

4      MS. BARBEE-WOOTEN: Okay, and he is also going to be

5   deposed later on.

6      MR. SALAS:  Yeah, I forget the time now, is that

7   right after this?

8      MS. BARBEE-WOOTEN: Okay.  Yeah, right after this.

9   Okay.

10                   DIRECT EXAMINATION

11   BY MS. BARBEE-WOOTEN:

12   Q   Mr. Tsukada, you have had your deposition taken

13      before, is that correct?

14   A   That's correct.

15   Q   Okay, if you do not understand a question that I ask

16      you, please say so.

17   A   Yes.

18   Q   Okay, you understand that you were sworn in and that

19      the answers you are giving me for the questions

20      should be truthful.

21   A   Yes.

22   Q   Okay.  All right, first of all, what is your

23      position at the Saipan Grand Hotel?

24   A   General manager.

25   Q   Okay.  As a general manager, do you have authority

```
1            to hire and to terminate employees?

2     A     Yes.

3     Q     Okay.  How long have you been general manager for

4            Saipan Grand Hotel?

5     A     Two years and four, five months.

6     Q     Okay.  Who are the owners of Saipan Grand Hotel?

7     A     The largest majority shareholder is Nagoya Railways.

8            INTERPRETER: N-A-G-O-Y-A.

9            MS. BARBEE-WOOTEN: Railways?

10           INTERPRETER: Railways.

11    Q     Who's on the board of directors?

12    A     Myself and the president, Mr. Uemura.

13           MS. BARBEE-WOOTEN:  Okay.

14           INTERPRETER: That would be, I mean U-A -- I mean I'm

15    sorry, U-E-M-U-R-A.

16    A     And Mr. Jesus Sablan.

17    Q     Is that all?  Just three?

18    A     Yes, three from the local community.

19    Q     Three members of the board of directors?  Are there

20           only three members?

21    A     I believe it to be five altogether.

22    Q     And, what are the other two, you've given me three

23           names?

24           INTERPRETER: Can I clarify?

25           MS. BARBEE-WOOTEN: Oh.
```

1          INTERPRETER: Okay.  Let me put it out.  From Nagoya

2     Railways, director, adviser, chairman.  That's what he

3     said.

4     Q    Uh-huh?  Okay, are there only three members on the

5          board of directors?

6     A    There are five.

7     Q    Okay, would you name the five again?

8     A    Taniguchi, Minoura, and the other three is -- ah the

9          other three I mentioned.

10    Q    Okay, that would be Jesus Sablan, yourself, and

11         Uemura?

12    A    Yes.

13    Q    Okay.  You said that the largest shareholder owner

14         of the hotel is Nagoya Railways, where are they

15         located?

16    A    It has its headquarters in Nagoya in Japan.

17         MS. BARBEE-WOOTEN:  In Japan.

18         INTERPRETER:  It's N-A-G-O-Y-A.

19    Q    Okay.  You are familiar with Alisanre Angeles, is

20         that correct?

21         INTERPRETER: Can I have the name again?

22         MS. BARBEE-WOOTEN:  Alisanre Angeles.

23         INTERPRETER: Alisanre Angeles.

24    A    Yes.

25    Q    Are you aware that he has been a gardener at Saipan

-8-