1  **WILLIAM R. TAMAYO – # 084965 (CA)**
2  **DAVID F. OFFEN-BROWN - #063321 (CA)**
   **LINDA ORDONIO-DIXON - # 172830 (CA)**
3  **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
   **San Francisco District Office**
4  **350 The Embarcadero, Suite 500**
   **San Francisco, CA 94105-1260**
5  **Telephone No. (415) 625-5654**
   **Fax No. (415) 625-5657**
6
   **Attorneys for Plaintiff**
7

8            **UNITED STATES DISTRICT COURT**
9          **FOR THE NORTHERN MARIANA ISLANDS**

10
11  **EQUAL EMPLOYMENT**                    **Civil Action No.: No. 04-0028**
    **OPPORTUNITY COMMISSION,**
12                                          **PLAINTIFF EEOC'S REPLY TO**
                                            **DEFENDANT'S OPPOSITION TO**
13        **Plaintiff,**                    **MOTION TO QUASH**

14        **vs.**

15  **MICRO PACIFIC DEVELOPMENT, INC.**     **Date: August 25, 2005**
    **dba SAIPAN GRAND HOTEL,**            **Time: 8:30 a.m.**
16
          **Defendant**
17

18

19       Plaintiff Equal Employment Opportunity Commission files the instant Reply to

20  Defendant's Opposition to the EEOC's Motion to Quash Subpoenas.

21

22  I.    Financial Records

23       According to Defendant, the financial records sought are relevant for two reasons: 1)

24  "the Torreses were under extreme financial pressure in 2003 and brought this claim through the

25  EEOC purely to get money to pay creditors and not because the harassment they allege to have

P'S REPLY – MOT TO QUASH                        1
CIVIL ACTION NO. 04-0028

F I L E D
Clerk
District Court

AUG 1 8 2005

For The Northern Mariana Islands
By_____
        (Deputy Clerk)

1  happened actually occurred" [Defendant's Opposition at page 2, lines 3-7.] and, 2) if "Julieta

2  Torres was borrowing money from Akira Ishikawa, the alleged sexual harasser, at a time when

3  she alleges the sexual harassment was occurring" this conduct was "not at all consistent with a

4  victim of sexual harassment and…it makes it hard to believe [Mr.] Ishikawa was harassing

5  her." [Defendant's Opposition at page 2, lines 7-11.]

6      Defendant's argument that Mrs. Torres complained about sexual harassment in order to

7  get money to pay creditors is illogical and contradicts Defendant's own investigation of Mrs.

8  Torres' complaint.  Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant gave

9  binding testimony which admitted that the company's investigation of Mrs. Torres complaint

10  specifically found that she was sexually harassed by Mr. Ishikawa. [Dixon Decl. at para. 3.].

11  Defense counsel himself confirmed that "[t]he investigation conducted by the hotel concluded

12  that [Mrs. Torres'] complaint had merit" and that Mrs. Torres herself told the company what

13  she wanted as a result of her complaint:  "Ishikawa not to harass anyone else, she wanted

14  Ishikawa to apologize and she did not want to work in the same department as Ishikawa."

15  [Dixon Decl. at para. 4.]  For Defendant to now claim that Mrs. Torres' complaint was

16  motivated by financial distress is, at best, disingenuous.

17      The financial documents sought by Defendant are those of Vincente Torres for the period

18  of 1999 to the present.  Defendant's opposition focuses on "the desperate financial straits of the

19  Torreses in 2003." [Defendant's Opposition at page 2, line 15, emphasis added.]  Remarkably,

20  Defendant failed to provide any basis for its subpoena of documents other than for the year

21  2003.  Indeed, the time frame of the subpoena extends for years prior to and after 2003 and

22  Defendant provides no justification for this broad time scope.

23      Defendant's subpoena seeks Mr. Torres' financial information in the years prior to his

24  marriage to Mrs. Torres on August 23, 2002. [Dixon Decl. at para. 5.]  Defendant takes great

25  pains to discuss Mr. Torres' finances in the 1990's --- which occurred years before their

Received  Aug-18-2005  15:12    From-14156255657        To-US DISTRICT COURT, N    Page  003

1   marriage.  According to Defendant's tortured logic, Mrs. Torres and her husband possibly

2   "exaggerated" the extent of the harassment to "get money out of the Defendant to pay their

3   debts."  This is mere unsupported conjecture on the part of Defendant.  Simply stated, Mr.

4   Torres' financial obligations prior to his marriage to Mrs. Torres are completely irrelevant to

5   this case.

6          The scope of the subpoena also includes documents dated after November 2002, the date

7   which Mrs. Torres complained to Defendant's personnel manager about sexual harassment.

8   [Dixon Decl. at para. 6.]  Even if the documents sought by Defendant proved that the Torres

9   family was experiencing financial difficulty, it would have no logical relevancy to the claims in

10  this case, despite Defendant's unsupported assertions to the contrary.  As noted, Mrs. Torres

11  had already filed her complaint with the company by November 2002, so the Torreses'

12  finances after November 2002 could not have been a factor in Mrs. Torres' motivation to

13  complain.  As such, there is no basis for Defendant's subpoena of financial records after Mrs.

14  Torres' November 2002 complaint.

15         With regard to Defendant's outrageous allegations that Mrs. Torres would grab Mr.

16  Ishikawa's crotch and ask for loans or that borrowing money from Mr. Ishikawa somehow

17  illustrates that she was not a victim of harassment Plaintiff must point out the obvious:

18  Defendant has provided no evidentiary basis to support these allegations — not a single page of

19  evidence — not a statement of a witness — nothing.  These allegations are simply untrue.

20  Nevertheless, Defendant has failed to explain how the records it has subpoenaed would tend to

21  prove or disprove this supposed conduct on the part of Mrs. Torres.  There is no logical

22  connection between the records sought and the allegations that Defendant hopes to prove.

23         Simply stated, Defendant seeks financial records that are far beyond the scope of this

24  lawsuit, are irrelevant to the claims and defenses in this lawsuit and are not reasonably calculated

25  to lead to the discovery of admissible evidence.

Received  Aug-18-2005  15:12     From-14156255657          To-US DISTRICT COURT, N   Page 004

1    II     Immigration Records

2         Defendant claims that the immigration records sought by the company are needed in

3    order to determine whether the Torreses were untruthful in completion of these records. In

4    support of this argument, Defendant cites two cases.  The first, *Davidson Pipe Company v.*

5    *Laventhol and Hoswath* is incorrectly cited as 120 F.R.D. 445 (DC NY 2988). The case at this

6    citation is *International Digital Systems Corp. vs. Digital Equipment Corp.*  This case involves

7    the inadvertent disclosure of documents protected by the attorney/client privilege; it does not

8    support Defendant's argument.  The actual cite for the case entitled *Davidson Pipe Company v.*

9    *Laventhol and Hoswath* is 125 FRD 363.  *Davidson* concerns jury trial demands; it likewise

10   does not support Defendant's argument here.  [Plaintiff notes that Defendant cited to these

11   cases during "meet and confer" communications and Plaintiff advised as to the problems

12   detailed above – apparently to no avail. See Exhibit F to Plaintiff's Moving Brief.]  The second

13   case cited by Defendant is *U.S. v. IBM* 66 F.R.D. 215 (S.D.N.Y.)  In *IBM*, the Court allowed

14   discovery of a witness' financial holdings which would be that would be financially impacted

15   by the verdict in the case.  In allowing the discovery to go forward, the *IBM* Court reasoned

16   that good cause had not been shown for protection under F.R.C.P 26(c) as the witness did "not

17   demonstrate that allowing discovery will cause him [or another witness] annoyance,

18   embarrassment, oppression, or undue burden or expense." *Id.* at 219.

19        As set out in Plaintiff's moving brief, the production of their immigration related

20   documents would cause the Torreses deep humiliation, annoyance, embarrassment, and

21   oppression. Moreover, as the Ninth Circuit noted in *Rivera v. Nibco, Inc.*, 364 F.3d 1057 (9th

22   Cir. 2004), [t]he chilling effect such discovery could have on the bringing of civil rights

23   actions unacceptably burdens the public interest." *Id* at. 1065.  In this public enforcement

24   action, brought by the EEOC on behalf of the public interest, such concerns are paramount.

25

Received   Aug-18-2005  15:12     From-14156255657              To-US DISTRICT COURT, N    Page  005

1   Defendant's clear objective in requesting immigration records is to harass and
2   intimidate witnesses. Indeed, in withdrawing its subpoena for Renen Ansus' immigration
3   records, Defendant implies prior ignorance regarding Plaintiff's position as to his status as a
4   witness in this lawsuit. In fact, on July 14, 2005, EEOC counsel specifically advised during
5   "meet and confer" communications that Mr. Ansus "has not been named as a potential witness
6   in this suit by the Plaintiff, nor will the EEOC call him as a witness at trial." [Exhibit F to
7   Plaintiff's Moving Brief.] The only clear reason for the request for the immigration records
8   was to harass, intimidate, annoy and embarrass the witnesses.

9

10  .   III.    Conclusion

11  Defendant's subpoena for records regarding financial records and immigration documents
12  should be quashed.

13

14  Dated: August 17, 2005                Respectfully submitted,

15

16

17

18  **LINDA ORDONIO-DIXON**

19  **EQUAL EMPLOYMENT**
    **OPPORTUNITY COMMISSION**
20  **San Francisco District Office**
    **350 The Embarcadero, Suite 500**
21  **San Francisco, CA  94105-1260**

22

23

24

25

P'S REPLY – MOT TO QUASH                    5
CIVIL ACTION NO. 04-0028