FILED
Clerk
District Court

SEP 1 4 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

Civil Action No. 04-0028

v.

MICRO PACIFIC DEVELOPMENT
INC. d/b/a SAIPAN GRAND HOTEL

    Defendant.

_____ /

**PRELIMINARY EXPERT WITNESS REPORT OF AMY OPPENHEIMER**

**I Background**

    I have been retained on behalf of the plaintiff, Equal Employment Opportunity Commission to render an opinion of the defendant Micro Pacific Development Inc. d/b/a Saipan Grand Hotel actions in preventing, investigating and responding to complaints of sexual harassment, and to what is considered typical and acceptable human resource practice in regard to preventing and responding to sexual harassment, in the workplace. I have been an attorney for over twenty four years. For more than thirteen years I have trained employers and employees in preventing and responding to harassment and discrimination, consulted on harassment and discrimination policies, acted as a neutral investigator of charges of discrimination in employment, and testified as an expert witness in retaliation, discrimination and harassment cases. From 1986 to 1990 I Investigated EEO complaints for federal government agencies. I co-authored a book

Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel
Report of Amy Oppenheimer
Page 2

about investigating workplace harassment, entitled: *Investigating Workplace Harassment: How to be Fair, Thorough and Legal*, published in 2002 by Society for Human Resource Management. Since 1992 I have also served as an Administrative Law Judge for the State of California. My CV, rate sheet and list of cases I have testified in are attached.

My understanding is that discovery has not yet closed and therefore I have not yet had an opportunity to review all of the evidence in this case. Hence my opinions are preliminary and may be augmented after further discovery is completed.

**II Material reviewed**

I have reviewed the following materials in forming my opinion:

A. Plaintiff EEOC's Responses to Defendant's First Set of Requests for Interrogatories and Documents with bate stamped documents attached (EEOC 001 – 137)

B. EEOC document bate stamped EEOC0118 with translation

C. Documents bate stamped 00001    00009; 00541 - 00572

D. Notice of Corporation Deposition

E. Notice of depositions: Jesus Aldan, Masahiko Tsuchimoto, Bonafacio Demetrio, Francisco Dela Cueva

F. Documents: 00591; 00588; 00587; 00541 – 00572; 00597; 00107; 00370; 00007 – 00010; 00101 – 00102; 00002 – 00003; 00462- 00464; 00442; 00426; EEOC ex. 13; 00063; EEOC 076; 00009.

G. Deposition of Masahiko Tsuchimoto.

H. Deposition of Jesus Aldan.

Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel
Report of Amy Oppenheimer
Page 3

    I. Deposition of Julieta Torres (June 3, 2005 and July 20, 2005).

    J. Deposition of Aurora Salac (June 1, 2005 and July 19, 2005)

    K. Deposition of Renen Ansus

    L. Deposition of Vicente Torres

    M. Deposition of Francisco Dela Cueva

    N. Deposition of Bonafacio Demetrio

    O. Deposition of Arcely Sison

## III Opinions

### 1. Defendant Failed to Follow Usual and Customary Human Resource Practice in the Area of Sexual Harassment Prevention and Response

It is usual and customary human resource practice to educate employees, supervisors and managers about sexual harassment and take steps to prevent workplace harassment. Defendant failed to follow this usual and customary practice in several respects.

First, the employer's policies regarding harassment were only available in English, a language that many employees (perhaps most employees) cannot read. Policies that cannot be easily read and understood by employees are essentially useless. Moreover, there was no verbal information or training provided to employees about the policies. The defect of the unavailability of policies in the language read by the employee could have been addressed by clear verbal instructions about harassment. This should include what harassment consists of, that it violated the employer's rules and

*Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel*
Report of Amy Oppenheimer
Page 4

would not be tolerated, that there would be no retaliation for complaining, and instructions on how to complain. No such information or training was provided here.

Supervisors, managers and complaint handlers were also not trained about harassment. This is a significant derivation from accepted human resource practice. In order to know how to properly respond to complaints of harassment supervisors should be thoroughly trained on how to identify and respond to any notice of harassment. Complaint handlers should have even more extensive training on how to investigate complaints. None of this occurred here. All of the supervisors/managers involved in this case admitted receiving no training on how to execute their duties and none knew basic techniques of how to investigate and respond to such complaints.

It must be emphasized that the work force here is especially vulnerable to harassment. The work force is largely low paid immigrant labor working in a hotel/restaurant environment. This type of workplace typically has a large incidence of harassment and this type of population is particularly fearful of complaining. The risks associated with complaining are great – loss of subsistence level work and perhaps not being able to stay in Saipan. Many of the employees are Filipino women performing unskilled work. Culturally this group tends to have a difficult time defying authority.

In fact there was evidence that people who did complain about workplace harassment and other problems did not have their contracts renewed. As employees become aware of this occurring, it has a chilling effect other employees coming forward with complaints. For all of these reasons it is particularly important for the employer to have clear rules against harassment that are visibly enforced. Without this it would be unlikely that complaints of harassment would surface. The point of prevention policies is

Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel
Report of Amy Oppenheimer
Page 5

to ensure that these complaints do surface as soon as possible so that harassment does not worsen.

### 2. Defendant did not Have Adequate Systems in Place to Track Harassment Complaints

It is important that employers keep records of harassment complaints and that they be able to access these records as other complaints surface so that any disciplinary action taken takes past complaints into effect. Here there was evidence of past complaints of harassment and/or workplace violence involving the same perpetrator yet there was no written record. Nor did it appear that disciplinary action had been taken in regard to those past complaints. Also, the ultimate discipline here did not appear to factor in the past complaints. The defendant's failure to document, track and take into account these past complaints is inconsistent with appropriate human resource practice.

### 3. Defendant's Failure to Take Action to Respond to Notice of Workplace Harassment was Inconsistent with Appropriate Human Resource Practice

There was substantial evidence that Ishikawa had harassed numerous women, that a number of women had complained to supervisors about the harassment (including complaints to Shizimu, Matsumoto, Demetrio and Dela Cueva) and that harassment occurred in front of supervisors (such as Demetrio and Dela Cueva). Appropriate human resource practice is to take action any time there is a complaint of conduct that would violate rules against harassment and when a supervisor sees or hears about something that would violate rules against harassment. There was a repeated failure to do so here. Rather, when supervisors were notified they took little or no action and when harassment

Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel
Report of Amy Oppenheimer
Page 6

was viewed no action was taken. There was evidence (some contested and some not) that supervisors saw Ishikawa unhook employees' bra straps, touch employees' breasts and touch employees' buttocks with a chopstick. Plaintiff Torres herself asked to have her schedule changed because of his treatment, and made a detailed complaint about the harassment to Shimizu.

It was uncontroverted that supervisors saw and heard Ishikawa yell at employees and throw things. While the later may not be sexual harassment, it was abusive behavior that should not be tolerated at the workplace. Yet little or no action was taken to rein Ishikawa in and he was allowed to harass employees for an extended period of time without consequence. Clearly this went entirely against all accepted human resource practices.

4. **Defendant Failed to do a Reasonable, Fair and Thorough investigation of Julieta Torres' Complaint**

Ultimately Torres complained to Tsuchimoto and Aldan was tasked to investigate the complaint. However a reasonable and through investigation did not occur. Instead there were brief conversations with Torres and Ishikawa. There was no attempt to find out the extent and severity of the harassment (which is necessary in order to determine what disciplinary action is appropriate), there was no attempt to talk to other supervisors and managers as to what they had observed and there was no timely attempt to speak with other potential victims. Aldan testified that about a month after the complaint he did speak to some of the women who worked under Ishikawa however this was certainly not a timely response moreover these were very brief discussion – Aldan referred to them as "spot checks". Tsuchimoto's conversations with Torres and Ishikawa were even more

Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel
Report of Amy Oppenheimer
Page 7

abbreviated. Thorough interviews should have taken place immediately following the complaint.

In fairness, Aldan had no training or experience with investigating such complaints and little power to take any action against Ishikawa. Thus even if he wanted to act in good faith, he didn't have the ability to do so. It is the employer's responsibility to ensure a thorough investigation by someone with the ability to do the job. This did not occur here.

One thing that did occur that was particularly troubling was the "Japanese style" interview that involved forcing Torres to detail her complaints in front of five male managers. While this may (or may not) be how it is done in Japan, it is not how things are done under accepted U.S. practice. Such an atmosphere is hardly conducive to someone being forthright about conduct that they may very well find embarrassing and hurtful to discuss, especially in front of men. This was yet another policy designed to prevent victims of harassment from coming forward.

5. **Defendant's Actions After the Complaint and "Investigations" were Inconsistent with Usual and Customary Human Resource Practice and Could have a Chilling Effect on Other Employees' Coming Forward**

Defendant did make a determination that Ishikawa had engaged in unwanted touching (harassment) in violation of it's rules. The steps it took to remedy the situation were, however, problematic and not consistent with usual and customary human resource practice in several respects.

Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel
Report of Amy Oppenheimer
Page 8

First, Torres was asked to sign a "forgiveness" letter. Torres had no obligation to forgive Ishikawa for sexually assaulting her nor did she have any obligation to forgive the employer for allowing it to happen. Asking her to sign such a letter was a heavy-handed abuse of power that was totally outside any accepted practice. Worse, defendant asked her to agree not to sue them for the behavior. The fact is that Torres had every right to take any legal action she wanted to pursue and proper practice is to inform individuals of these rights and make it clear that no action will be taken in retaliation for pursing legal remedies. Defendant's actions were just the opposite.

Second, the defendant decided to keep Ishikawa on for economic reasons, putting the convenience and profit of the employer in front of the health and safety of its' employees. The fact that Ishikawa would be difficult to replace should have had no bearing on what action was taken against him. Decisions about disciplinary action should be made based on the seriousness of the conduct (which here was quite serious) rather than the importance of the employee.

Having made the seriously misguided decision to keep Ishikawa on until his contract expired the employer failed to monitor the work environment to ensure that his behavior did not continue. Further the defendant did not institute training for Ishikawa, other supervisors/managers or the staff. In essence, nothing was learned and nothing changed from this devastating event.

Lastly, defendant failed to take affirmative steps toward the complainant and instead put her in a position where she needed to transfer. It is a basic human resource principal that if it is unreasonable to expect the complainant and respondent involved in a harassment situation to work together, the harasser should be the one transferred, not the

Equal Employment Opportunity Commission v. Micro Pacific Development Inc. d/b/a Saipan Grand Hotel
Report of Amy Oppenheimer
Page 9

victim. Nor did they get back to Torres with the results of the "investigation" nor did they follow through with her to see how she was doing. All of these steps are routine in a situation such as this.

### IV. Conclusion

Defendant's actions in failing to prevent workplace harassment, failing to take action when on notice of harassment, failing to adequately investigate workplace harassment and failing to take appropriate action to deter it's manager from harassing employees was seriously deficient. The actions of defendant deviated from standard and customary practice in many significant ways.

Respectfully submitted,

Amy Oppenheimer

Dated: August 18, 2005